LOUIS D. GOLDBERG, PLAINTIFF-RESPONDENT, v. BEN-JAMIN FARBER AND ISIDOR KAPLAN, DEFENDANTS-APPELLANTS.

NORTH JERSEY MORTGAGE COMPANY, INCORPORATED, PLAINTIFF-RESPONDENT, v. BENJAMIN FARBER AND ISIDOR KAPLAN, DEFENDANTS-APPELLANTS.

Argued October 6, 1927—Decided February 25, 1928.

Before Justices KALISCH, KATZENBACH and LLOYD.

For the appellants, *Braelow & Tepper* and *George F. Lahey, Jr.*

For the respondents, *Zucker & Goldberg.*

PER CURIAM.

The above cases are two appeals from the Essex County Circuit Court. The appeals were argued together. They present the same question, namely, the propriety of striking out an amended answer and entering summary judgment. The actions were instituted upon a bond given by the defendants in an attachment suit. One suit was by the attaching creditor; the other by an applying creditor. The facts briefly are that an attachment was issued by Louis D. Goldberg out of the Essex County Circuit Court against Jacob Miller and Joseph Friedman, partners, under which

goods and chattels belonging to said partners trading as Miller Friedman Company were attached. On June 7th, 1924, as the defendants in attachment wanted to appear, a bond was given to the sheriff of Essex county in the sum of $8,754.60 by the defendants in attachment with Benjamin Farber and Isidor Kaplan as sureties. The condition of the bond was that if a return of the goods seized was made, if judgment should be rendered for the plaintiff, then the obligation would be void. Goldberg obtained a judgment for $4,465.02. The goods were not returned. The sheriff assigned the bond to Goldberg who instituted suit upon it against Farber and Kaplan, the sureties. The answer as amended set up eight defenses. These were all struck out and summary judgment entered in favor of Goldberg.

The first ground of appeal is based upon the striking out of the seventh defense. As to this defense the lower court said:

"The seventh separate defense is that the true value of the goods and chattels, rights and credits and moneys and effects to be returned by them according to terms of their said bonds was less than $1,000 in value. That is no defense, and will be stricken out."

What the appellants desire to do is to prove the true value of the goods taken and have a judgment entered against them for only such value. We see no merit in this contention. The suit is on the bond which speaks for itself. The bond is for the payment of a specific sum of money if the goods are not returned. The bond was given under section 17, paragraph 1, of the Attachment act. This provision is as follows:

"A bond to the officer who attached the personal property in double the appraised value thereof, conditioned for the return of the said property in case judgment shall be rendered for the plaintiff or for any of the applying creditors; which bond, in case of breach of said condition, the said officer shall on application of the plaintiff or applying creditor, without fee, assign to such person as the court shall direct, to be prosecuted for the benefit of the plaintiff and applying creditors."

The appellants desire further to read into this section the words of the ninth section of the Attachment act which is as follows:

"9. Custody of personal property attached; bond by garnishee to officer; officer's compensation.—The personal property so attached shall remain in the safe keeping of the officer to answer and abide the judgment of the court, unless the garnishee, after inventory and appraisement thereof, shall enter into bond to the officer with two sufficient sureties, being freeholders of the county, or with a qualified surety company, in double the sum at which such property was appraised, with condition that the said personal property, or the full value thereof, to be estimated by such appraisement, shall be forthcoming to answer the judgment of the court; the officer shall receive reasonable compensation for the cost of storage, the wages of watchman or other expense necessary to securely keep the property, to be fixed by the court or a judge thereof and included in the officer's fees for executing the writ, and to be taxed in the costs; such compensation shall be paid out of the first moneys arising from the sale of the property." *Pamph. L.* 1901, *p.* 161.

This section of the act applies to garnishees and in our opinion cannot be read into a bond given under section 17, paragraph 1.

The attachment act (section 33) says the act must be construed in the most liberal manner for the benefit of creditors. It would certainly not be beneficial to creditors to sanction a practice which would permit testimony to be given as to the value of the goods attached after a bond is given, approved by the court, accepted by the creditor, and the goods are discharged from the lien of the attachment. The debtor, if he chose to do so, could sell or secrete the goods so that a creditor could obtain no testimony as to their value.

The question appears to have been decided in the case of *Hanness* v. *Bonnell,* 23 *N. J. L.* 159, where the court said:

"The defendant was permitted to receive and enjoy the property during the pendency of the attachment, upon the condition that he would return it in case judgment should be rendered for any creditor. Judgment having been rendered

and he having failed to return the property, the bondsmen are amenable to the penalty."

In *Vreeland* v. *Bruen, 21 N. J. L. 214*, the court said (at p. 229):

"The goods were first seized to compel the defendant's appearance; until that was effected, or judgment and sale, the lien continued; but when the defendant appeared and entered into special bail, the lien was discharged, and the plaintiff and applying creditors were compelled to look to the defendant and his bail  *  *  *.  The property is given up, and no power remains with the sheriff to reclaim it, or even to hold or dispose of it, under the original lien.  It must necessarily become subject to the defendant's sale or disposition, liable to any new liens that the owner or the law may create, or subject to be seized and sold under execution, without any power to prevent it.  Suppose, after the bond was given, a judgment creditor should cause the property to be sold by execution, could this court, if applied to, stay the sale, or order the sheriff to pay the money over for the benefit of the attachment?  No, the answer would be; you must look to your bond; and  *  *  *  suppose, instead of the sheriff, the defendant himself, or since his discharge as a bankrupt, his assignee should attempt to sell the personal estate levied on, could he be restrained at the instance of the plaintiff?  I think not; because his lien is divested, and other liens have arisen, leaving the party to his bond."

The second ground of appeal argued is that the court erred in holding that the obligation of the defendants was the sum mentioned in the bond rather than the value of the goods.  This is, in effect, the same question as has just been considered.  It is argued by the appellants that because no appraisement of the goods was made the situation is altered.  If the defendants in attachment chose to put up a bond without an appraisement being made they waived an appraisement.  *Berry* v. *Wasserman, 179 Mass. 537*.

The second case is that of an applying creditor who secured a judgment against the sureties on the bond.  The same questions are involved in this case.  The judgments of the Essex County Circuit Court are affirmed, with costs.